UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-09437 MMM (FMOx) | Date | March 5, 2013 |

| | |
|---|---|
| Title | *Michael Ontiveros v. Michaels Stores, Inc. et al* |

| Present: The Honorable | MARGARET M. MORROW |
|---|---|

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **Order to Show Cause Why Case Should Not Be Remanded to State Court; Order Vacating Hearing on Motion to Dismiss[13]; Deferring Ruling on Stipulation Regarding Amendment of Complaint; Vacating Scheduling Conference[14]**

### I. FACTUAL BACKGROUND

On October 4, 2012, Michael Ontiveros commenced this action against Michaels Stores, Inc. ("Michaels"), Daryl Kinsley, Sarkis Baghdadlian, and certain fictitious defendants.[1] On November 2, 2012, Michaels removed the action to this court, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.[2]

Ontiveros is a citizen of California.[3] Michaels is a Delaware corporation with its

---

[1]Removal, Docket No. 1 (Oct. 4, 2012), ¶ 1.

[2]Removal at 1.

[3]Removal, Exh. A ("Complaint"), ¶ 1.

principal place of business in Texas.[4]  On the day that Ontiveros filed his complaint, Kinsley was an Illinois citizen.[5]  Baghdadlian is a resident of California.[6]

Ontiveros was a Michaels employee from August 28, 2009 until his alleged constructive termination on March 26, 2011.[7]  While employed at a Michaels store located in Glendale, California, Ontiveros worked under the supervision of Baghdadlian, the store manager, and Kinsley, the district manager.[8]  Ontiveros alleges that Baghdadlian and Kinsley disciplined, intimidated, and harassed him in retaliation for his complaints about allegedly race-biased hiring practices at the store.[9]  Ontiveros is Latino.[10]

The complaint asserts claims for discrimination based on race/national origin in violation of the California Fair Employment & Housing Act ("FEHA") against Michaels and the fictitious defendants; harassment in violation of the FEHA; retaliation in violation of the FEHA against all defendants; failure to take reasonable steps to prevent harassment, discrimination, and retaliation in violation of the FEHA against Michaels and the fictitious defendants; wrongful termination in violation of the FEHA against Michaels and the fictitious defendants; and intentional infliction of emotional distress against all defendants.[11]

Ontiveros seeks general damages and special damages in an amount in excess of the minimum jurisdiction of the state court.  Specifically, he seeks damages to compensate him for loss of past and future earnings, as well as damages flowing from the loss of earnings, e.g., loss of job security, failure to advance properly in his career, and damage to reputation; damages for medical expenses and suffering; emotional distress damages; punitive damages;

---

[4]Removal, ¶ 9.  The complaint does not allege Michaels' citizenship; it alleges only that it has a store in Glendale, California.  (Complaint, ¶ 2.)

[5]Declaration of Darryl Kinsley ("Kinsley Decl."), Docket No. 2 (Nov. 2, 2012), ¶ 2.  The complaint alleges that Kinsley is a California resident.  (Complaint, ¶ 4.)  Defendants have adduced convincing evidence, however, that Kinsley has relocated to Illinois since the events alleged in the complaint.

[6]Complaint, ¶ 3.

[7]*Id.*, ¶ 9.

[8]*Id.*, ¶ 10.

[9]*Id.*, ¶¶ 15-20.

[10]*Id.*, ¶ 1.

[11]*Id.* at 5-20.

costs and attorneys' fees; interest; and reinstatement to his job.[12]

## II. DISCUSSION

### A. Legal Standards Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court involves a federal question or is between citizens of different states and has an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b). Only state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

### B. Requirements for Diversity Jurisdiction

Michaels contends that the court has diversity jurisdiction to hear this action under 28 U.S.C. § 1332.[13] "[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); see 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . ."). Federal courts have jurisdiction only where there is complete

---

[12]*Id.* at 20-21.

[13]Removal at 1.

diversity: the plaintiff's citizenship must be diverse from that of each named defendant. 28 U.S.C. §§ 1332(a)(1), 1332(c)(1); see *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 n. 3 (1996); see also *Cook v. AVI Casino Enters., Inc.*, No. 07-15088, 2008 WL 4890167, *3 (9th Cir. Nov. 14, 2008) (Unpub. Disp.) ("We have jurisdiction only if Cook, a resident of California, has citizenship which is diverse from that of every defendant," citing *Lewis*, 519 U.S. at 68).

### C. Whether the Requirements of Diversity Jurisdiction Are Met

#### 1. Amount in Controversy

The "amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000). Therefore, in cases where a plaintiff's state court complaint does not allege the amount of damages sought, the defendant must establish, by a preponderance of the evidence, that the amount in controversy exceeds the statutory minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("we hold that in cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the statutory minimum]"); *Faulkner v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198, * 2 (N.D. Cal. Oct. 4, 1999) (same).

"In determining whether the defendant has made such a showing, the district court must first consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Faulkner*, 1999 WL 820198 at *2 (citing *Singer v. State Farm Mutual Auto, Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "If the complaint does not specify a damages amount, the court can look at facts in the complaint and require the parties to submit evidence relevant to the amount in controversy." *Id.* (citing *Conrad Associates v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998)). A defendant must submit "summary-judgment-type evidence" to establish that the actual amount in controversy exceeds $75,000. *Singer*, 116 F.3d at 377 (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995)); see also *Matheson*, 319 F.3d at 1090 (same). "A defendant can introduce other jury verdicts to bolster its claim that potential punitive damages would raise the amount in controversy to over $75,000, but those jury verdicts must involve facts analogous to its own case." *Faulkner*, 1999 WL 820198 at * 4 (citing *Conrad*, 994 F.Supp. at 1201).

The complaint does not quantify the amount in controversy;[14] consequently, defendant bears the burden of proving, by a preponderance of the evidence, that the jurisdictional threshold is met. See, e.g., *Matheson*, 319 F.3d at 1090 ("Where it is not facially evident

---

[14]*Id*.

from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold"); *Gaus*, 980 F.2d at 566-67 ("If it is *unclear* what amount of damages the plaintiff has sought, as is true here with regard to [Plaintiff's] claim . . . then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount").

Michaels proffered evidence to support its contention that the amount in controversy in this case exceeds $75,000. Specifically, it estimates that plaintiff's claimed lost earnings and benefits for the nineteen months since his constructive termination total $76,381.58.[15] Michaels bases this estimate on plaintiff's hourly salary and benefit plan prior to his termination.[16] The evidence Michaels has adduced concerning the value of Ontiveros' prayer for lost earnings and benefits is sufficient to establish that the amount in controversy requirement is met, particularly given that Ontiveros also seeks emotional distress and punitive damages.[17] See *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1031-35 (N.D. Cal. 2002) (concluding, where plaintiff's wage loss alone would exceed $56,000 by trial, that diversity jurisdiction existed because such damages were in addition to a claim for statutory attorneys' fees, punitive damages, and emotional distress damages).

### 2. Complete Diversity

Ontiveros is a citizen of California.[18] The complaint alleges that Baghdadlian is a resident of California, but does not plead his citizenship[19] Michaels neither confirms or denies that Baghdadlian is a California citizen. It therefore fails to demonstrate that the citizenship of the parties is completely diverse as required by 28 U.S.C. § 1332.[20] *Matheson*, 319 F.3d at 1090; see also *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege

---

[15]Removal, ¶ 25.

[16]*Id*. (detailing an hourly wage of $21.70, annual salary of $45,136, and benefits amounting to roughly $3,105 a year).

[17]*Id.*, ¶¶ 26-28.

[18]Complaint, ¶ 1; see also Removal, ¶ 8.

[19]*Id.*, ¶ 3.

[20]As noted, Michaels is a Delaware corporation with its principal place of business in Texas. (Removal, ¶ 9.) At the time the complaint was filed, Kinsley was an Illinois citizen. (Declaration of Darryl Kinsley, Docket No. 2 (Nov. 2, 2012).

affirmatively the actual citizenship of the relevant parties"); *id.* ("[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency. To be a citizen of a state, a natural person must first be a citizen of the United States. The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state"); see also *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile").

Michaels argues, however, that Baghdadlian's citizenship is irrelevant because he was fraudulently joined by Ontiveros.[37] For the reasons stated herein, the court finds that Michaels has failed to demonstrate that Baghdadlian is a fraudulently joined defendant.

### a.   Fraudulent Joinder Standard

"It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich*, 846 F.2d at 1193 & n. 1; *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987)); see also *Burden v. General Dynamics Corp.*, 60 F.3d 213, 221-22 (5th Cir. 1995) (concluding that the district court had subject matter jurisdiction where a defendant charged with intentional infliction of emotional distress had been fraudulently joined). The joinder of a non-diverse defendant is considered fraudulent, and the party's citizenship may be disregarded, "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state. . . ." *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe*, 811 F.2d at 1339).

"Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). Because courts must resolve all doubts against removal, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D. Cal.1998)). Given this standard, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys.*, Inc., 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001); see also *Davis*

---

[37] Removal, ¶ 14.

*v. Prentiss Properties Ltd., Inc.*, 66 F.Supp.2d 1112, 1115 (suggesting that for fraudulent joinder to exist, a claim would have to be so frivolous as to also violate F.R.C.P. 11(b), meriting possible sanctions). Thus, "[i]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants[,] the court must remand." *Id*.

The fraudulent joinder rule applies only in cases where it is undisputably clear that the plaintiff has not stated a cause of action against the non-diverse defendant, and could not if given the opportunity to amend the complaint. *Lizari v. CVS Pharmacy Inc.*, No. CV 10-10066 SVW (AGRx), 2011 WL 223806, *2 (C.D. Cal. Jan. 20, 2011). See *Kruso v. International Telephone & Telegraph Co.*, 872 F.2d 1416, 1427 (9th Cir. 1989) (affirming a finding of fraudulent joinder where plaintiffs did not have standing to sue defendants because they were not personally involved in any of the transactions in question); *Maffei v. Allstate California Ins. Co.,* 412 F.Supp.2d 1049, 1053 (E.D. Cal. 2006) (dismissing claims against a non-diverse corporate defendant where evidence showed that it was "nothing more than an empty corporate shell" that had "never conducted business of any kind"); *Zogbi v. Federated Dept. Store*, 767 F.Supp. 1037, 1041-42 (C.D. Cal.1991) (dismissing claims for breach of an employment contract against non-diverse individual defendants because they were plaintiff's managers and were not parties to the contract). Essentially, defendants must show that plaintiff cannot assert a claim against the non-diverse party as a matter of law. See *Burris v. AT&T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL 2038040, *2 (N.D. Cal. July 19, 2006).

A defendant removing based on alleged fraudulent joinder "must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant." *Padilla v. AT&T Corp.*, 697 F.Supp.2d 1156, 1159 (C.D. Cal. 2009) (citing *Burris*, 2006 WL 2038040 at *2). Rather, the defendant must establish that plaintiff could not amend his complaint to add additional allegations correcting any deficiencies. See *Good*, 5 F.Supp.2d at 807; see also *Stanbrough v. Georgia-Pac. Gypsum LLC*, No. CV 08-08303 GAF, 2009 WL 137036, *2 (C.D. Cal. Jan. 20, 2009); *Padilla*, 697 F.Supp.2d at 1159. Consequently, if a defendant simply argues that plaintiff has not pled sufficient facts to state a claim, the heavy burden of showing fraudulent joinder has not been met. *Birkhead v. Parker*, No. C 12–2264 CW, 2012 WL 4902695, *3 (N.D. Cal. Oct. 15, 2012) ("Even if these allegations do not rise to the level of outrageous conduct, Defendants cannot establish that Plaintiff would not be able to amend the complaint to allege a[ ] viable claim [for intentional infliction of emotional distress] against [his former supervisor] under California law"); *Stanbrough*, 2009 WL 137036 at *2; *Padilla*, 697 F.Supp.2d at 1159 (defendant's argument that plaintiff had not pled facts sufficient to state a harassment claim against her supervisor did not establish that she could not amend her pleading and ultimately recover on such a claim).

Ontiveros asserts harassment and intentional infliction of emotional distress claims

against Baghdadlian. The court evaluates below whether there is a non-fanciful possibility that Baghdadlian could be held liable on these theories. See *Ritchey*, 139 F.3d at 1318.

### b. Harassment

Harassment is defined in section 7287.6 of the California Code of Regulations as including, but is not limited to, verbal harassment (e.g., epithets or slurs), physical harassment (e.g., assault or any physical interference with normal work or movement), visual harassment (e.g., derogatory posters or drawings), and sexual favors. The section states that harassment does not include reasonable discipline. An employee must allege facts showing that the workplace harassment was "severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees." *Hughes v. Pair*, 46 Cal.4th 1035, 1043 (2009) (quoting *Miller v. Department of Corrections*, 36 Cal.4th 446, 462 (2005)).

Under California Government Code § 12940(j), a plaintiff alleging a hostile working environment claim must show "(1) that he was subjected to verbal or physical conduct [based on] a protected characteristic; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *London v. CBS*, No. CV 12–6605 GAF, 2012 WL 4372280, *3 (C.D. Cal. Sept. 25, 2012). He must also show that the employer, once apprised of the harassment, failed to take adequate remedial and disciplinary action. *Pereira v. Schlage Electronics*, 902 F.Supp. 1095, 1101 (N.D. Cal.1995); *Rehmahni v. Superior Court*, 204 Cal.App.4th 945, 951-52 (2012).

Plaintiff alleges that while employed by Michaels, he was subjected to a hostile work environment by store manager Baghdadlian and the other defendants.[38] He asserts that the work environment was replete with harassment based on race/national origin.[39] Specific examples of the harassment plaintiff alleges include failure to investigate a complaint of discrimination, retaliation, intimidation, taking written disciplinary action against plaintiff on three occasions, failing to take steps to prevent harassment, and constructively terminating plaintiff.[40]

Michaels argues that the examples of harassment alleged in plaintiff's complaint amount to nothing more than conduct within the realm of personnel decisions, which cannot constitute

---

[38]Complaint, ¶ 38.

[39]*Id.*

[40]*Id.*, ¶¶ 38-41.

actionable harassment.[41] See *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 63-65 ("commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment.) Like the defendants in *Stanbrough* and *Padilla*, it attacks the merits of plaintiff's claim, and argues that Ontiveros has not pled sufficient facts to support the claim.

While Michaels' argument might prevail in the context of a motion to dismiss, it does not suffice to support removal on the basis of fraudulent joinder. Even if the complaint does not allege sufficient facts to plead a viable harassment claim against Baghdadlian, Michaels has not shown that the Ontiveros could not amend to add additional allegations of harassment. See, e.g., *Stanbrough*, 2009 WL 137036 at *2. Stated differently, "the . . . shortcomings" of the harassment claim, "if any, are strictly factual." *Id*. Purported deficiencies in the pleading do not demonstrate that Baghdadlian is a sham defendant. See *Padilla*, 697 F.Supp.2d at 1159 ("A defendant is not a fraudulently joined or sham defendant simply because the facts and law may further develop in a way that convinces the plaintiff to drop that defendant. . . . [D]enying federal jurisdiction in this case, where Plaintiff seeks to include her direct supervisor in a lawsuit relating to her termination, is consistent with the Founders' intent in establishing diversity jurisdiction").

Michaels also contends that plaintiff failed to exhaust administrative remedies prior to filing the complaint.[42] To assert a harassment claim under FEHA, an employee must file a timely administrative complaint with the California Department of Fair Employment and Housing ("DFEH") and obtain a notice of right to sue. *Romano v. Rockwell Int'l, Inc.*, 14 Cal.4th 479, 492 (1996) ("Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [DFEH] and must obtain from the Department a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA" (citations omitted)); see also *Okoli v. Lockheed Technical Operations Co.*, 36 Cal.App.4th 1607, 1613 (1995). Under the California Government Code, "any person claiming to be aggrieved by an alleged unlawful practice may file with the department a verified complaint, in writing, that shall state the name and address of the person, employer, labor organization, or employment agency alleged to have committed the unlawful practice complained of, and that shall set forth the particulars thereof and contain other information as may be required by the department." CAL. GOV'T CODE §12960(b). "[T]he defendant[ ] must have been named in the caption or body of the DFEH charge." *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal.App.4th 1505, 1515 (1996).

---

[41]Removal, ¶ 17.

[42]Removal, ¶15.

Michaels contends that Ontiveros failed to exhaust administrative remedies because he did not file a DFEH charge against Baghdadlian.[43] As support for this contention, Michaels notes that the complaint alleges that Ontiveros filed a single charge with the DFEH.[44] Michaels also asserts that only "Michael's Arts and Crafts," is mentioned in the notice of case closure/right-to-sue letter attached to the complaint.[45] While Baghdadlian's name is not mentioned in the DFEH letter, it is unclear whether Baghdadlian's name was mentioned in the body of the charge Ontiveros filed with DFEH.[46] Because it does not have the charge before it, the court cannot conclusively determine that it did not name Ontiveros. Consequently, Michaels has not shown that Ontiveros could not amend his complaint to plead that he exhausted administrative remedies as to Baghdadlian and has not met its burden of showing by clear and convincing evidence that Baghdadlian was fraudulently named as a defendant in Ontiveros' harassment claim.

### c. Intentional Infliction of Emotional Distress

The elements of the tort of intentional infliction of emotional distress ("IIED") are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Wilson v. Hynek*, 207 Cal.App.4th 999, 1009 (2012) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593 (1979) (internal quotation marks omitted). See, e.g., *Johnson v. Ralphs Grocery Co.*, 204 Cal.App.4th 1097, 1108 (2012) ("Ordinarily mere insulting language, without more, does not constitute outrageous conduct").

Ontiveros alleges that Baghdadlian intentionally caused him emotional distress by subjecting him to a hostile work environment; failing to take remedial action when he complained of harassment and discrimination; constructively discharging him in retaliation for his complaints of harassment and discrimination; and subjecting him to all of the conduct alleged in the complaint (e.g., disciplinary action).[47] Ontiveros alleges that these acts caused

---

[43]*Id.*, ¶16.

[44]*Id.*

[45]*Id.*; see also Complaint, Exh. A.

[46]See Complaint, Exh. A.

[47]*Id.*, ¶¶ 81-82.

10

him to suffer depression and resulted in a deterioration in his health.[48] He alleges that he had trouble sleeping, and that he experienced fatigue, anxiety attacks, psychological problems, headaches, stomach aches, and nausea as a result of the hostile work environment.[49]

Michaels argues that Baghdadlian's alleged conduct falls within the scope of personnel management activity, and it is thus "impossible for Plaintiff to maintain his intentional infliction of emotional distress claim as to Baghdadlian."[50] Once again, it cites *Janken*, which held that "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency. . . . A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken*, 46 Cal.App.4th at 80.

"[A] claim of intentional infliction of emotional distress [can be asserted, however,] '[w]here the behavior goes beyond the act of termination" or other management activity. *Dagley v. Target Corp., Inc.*, No. CV 09–1330 VBF (AGRx), 2009 WL 910558, *3 (C.D. Cal. Mar. 31, 2009) (quoting *Gibson v. American Airlines*, No. C 96–1444 FMS, 1996 WL 329632, *4 (N.D. Cal. June 6, 1996)); see also *Graves v. Johnson Control World Services, Inc.*, No. C–05–1772 SC, 2006 WL 618796, *11 (N.D. Cal. Mar. 13, 2006) ("In response, Johnson Control argues that Graves cannot prevail on this cause of action because, as a matter of law, personnel management decisions are not 'outrageous conduct beyond the bounds of human decency.' . . . The court in *Janken* . . . note[d] that the remedy for personnel management decisions, even where improperly motivated, is 'a suit against the employer for discrimination.' . . . However, Defendant overstates the reach of the Court's decision in *Janken* to the extent that it argues that any decision affecting personnel management is not actionable under an intentional infliction of emotional distress theory, no matter what the motivation. . . . That proposition is far too broad for the *Janken* decision to bear, and, in fact, courts considering intentional infliction of emotional distress claims have clearly ruled that such claims can be brought where the 'distress is engendered by an employer's illegal discriminatory practices," citing *Accardi v. Superior Court*, 17 Cal.App.4th 341, 353 (1993), and *Hamilton v. Signature Flight Support Corp.*, No. C–05–409, 2005 WL 1514127, *7 (N.D. Cal. June 21, 2005)).

Courts have generally found that IIED claims based on workplace discrimination are properly asserted against individual supervisors. *Chavez v. Amerigas Propane, Inc.*, No. CV 12–07524 MMM (Ex), 2013 WL 25882, *7 (C.D. Cal. Jan. 2, 2013) (supervisor was not fraudulently joined, where plaintiff alleged that the supervisor showered favoritism to young,

---

[48]*Id.*, ¶ 83.

[49]*Id.*

[50]Removal, ¶ 20.

Caucasian employees and failed to promote him because of his ethnicity, citing *Barsell v. Urban Outfitters, Inc.*, No. 09–2604 MMM (RZx), 2009 WL 1916495, *4 (C.D. Cal. July 1, 2009) ("Because this claim [for IIED] is based on allegations of disability discrimination, there is a non-fanciful possibility" that plaintiff can state a claim against her supervisor)); *Graves v. Johnson Control World Services, Inc.*, No. C–05–1772 SC, 2006 WL 618796, *11 (N.D. Cal. Mar. 13, 2006) ("[C]ourts considering intentional infliction of emotional distress claims have clearly ruled that such claims can be brought where the 'distress is engendered by an employer's illegal discriminatory practices'"); *Rojo v. Kliger*, 52 Cal.3d 65, 81(1990) (stating that an "employer's discriminatory actions may constitute . . . outrageous conduct under a theory of intentional infliction of emotional distress"); *Murray v. Oceanside Unified School Dist.*, 79 Cal.App.4th 1338, 1362 (2000) (stating, in a case involving discrimination based on sexual orientation, that "a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices"); see also *De Ruiz v. Courtyard Management Corp.*, No. C 06–03198 WHA, 2006 WL 2053505, *4 (N.D. Cal. July 21, 2006) ("[C]onduct contrary to the public policy . . . can support an IIED claim" against an individual supervisor).

"Whether . . . alleged behavior is sufficiently extreme as to constitute 'outrageous' behavior is properly determined by the fact finder after trial or possibly after discovery upon a motion for summary judgment." *Angie M. v. Superior Court*, 37 Cal.App.4th 1217, 1226 (1995). Thus, in other cases in which defendants have argued that a supervisor's alleged conduct was not sufficiently outrageous to support an intentional infliction of emotional distress claim, district courts applying the fraudulent joinder standard have generally concluded that there was a non-fanciful possibility of liability even where the plaintiff's claim appeared "relatively weak." See *Asurmendi v. Tyco Electronics Corp.*, No. C 08–5699 JF (PVT), 2009 WL 650386, *5 (N.D. Cal. Mar. 11, 2009). District courts have also remanded where the complaint failed to allege outrageous conduct, because it was possible that plaintiff could cure the deficiency by amendment. See *Burris*, 2006 WL 2038040 at *2 ("Cingular does not argue that Burris cannot assert a tort claim for emotional distress against his former supervisor as a matter of law. Rather, Cingular argues that Burris failed to state a claim for intentional infliction of emotional distress because he did not allege any extreme or outrageous conduct, a necessary element of this claim. . . . Although as currently ple[d], Burris has not alleged conduct which may be considered extreme or outrageous, Cingular has not demonstrated that, under California law, Burris would not be afforded leave to amend his complaint to cure this purported deficiency. Accordingly, Cingular failed to demonstrate that it is obvious under settled state law that Burris cannot prevail against Mr. Caniglia and thus has not demonstrated that this Court has subject matter jurisdiction").

Michaels does not demonstrate that Ontiveros cannot plead an emotional distress claim against his former manager as a matter of law; it asserts only that the complaint presently fails to state a viable emotional distress claim. While Ontiveros' vague allegations concerning Baghdadlian's conduct may be insufficient to differentiate the alleged conduct from normal

personnel management actions, the deficiencies do not demonstrate that Ontiveros would not be able to amend to allege a viable IIED claim against Baghdadlian based on discriminatory practices. See *Chavez*, 2013 WL 25882 at *7; *Burris*, 2006 WL 2038040 at *1-2. This is particularly true since Ontiveros alleges that Baghdadlian's actions were motivated by discriminatory animus. Michaels' arguments, which go to the merits of the pleading as currently alleged, do not demonstrate that Baghdadlian is a sham defendant. Consequently, Michaels fails to meet its heavy burden of showing that Baghdadlian has been fraudulently joined.

### III. CONCLUSION

For the foregoing reasons, the court orders defendant Michaels to show cause on or before **March 11, 2013** why this case should not be remanded for lack of diversity jurisdiction. Failure to respond by this date will result in the waiver of defendant's right to respond and immediate remand of the action to state court. Pending resolution of the jurisdictional issue, the court vacates the hearing on Michaels' motion to dismiss Ontiveros's complaint, and will defer ruling on the parties' stipulation to permit Ontiveros to file a first amended complaint. The court also vacates the scheduling conference currently set for March 11, 2013.